**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

JULIE COUSINS,

        Plaintiff,

vs.                            CASE NO: 2:12-cv-505-FTM-29DNF

CAROL W. COLVIN[1],
Acting Commissioner of Social Security,

        Defendant.
_____

**REPORT AND RECOMMENDATION[2]**

    This matter comes before the Court on the Plaintiff, Julie Cousins', Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. 1) filed on September 12, 2012, in the Middle District of Florida, Fort Myers Division.  The Plaintiff filed her Memorandum in Opposition to the Commissioner's Decision (Doc. 20) on February 27, 2013.  The Commissioner filed the Memorandum of Law in Support of the Commissioner's Decision (Doc. 22) on April 29, 2013.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. FED. R. CIV. P. 25(d).  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. § 405(g).

The Court has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

### Procedural History

The Plaintiff previously filed an application for a period of disability and disability insurance benefits on October 11, 2007 (Doc. 19 at 2).  The claim was denied initially and upon reconsideration (Tr. 123).  The Plaintiff then sought a hearing in front of an Administrative Law Judge (ALJ), appeared, and testified on March 30, 2009 (Tr. 123). On June 3, 2009, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act, and denied benefits as a result (Tr. 123–46).  Thereafter, Plaintiff appealed the ALJ's decision to the Appeals Council (AC), which vacated and remanded the ALJ's decision on August 24, 2010 citing new medical evidence and an error by the ALJ when examining the vocational expert (VE), wherein the ALJ failed to ask the VE on the record whether his testimony conflicted with information found in the Dictionary of Occupational Titles (DOT) (Tr. 148–49).  On remand, a different ALJ considered Plaintiff's claim in light of the new evidence and rendered a decision on August 26, 2011 finding Plaintiff not disabled under the Act (Tr. 19–37).  The Plaintiff appealed to the AC a second time, and was denied review on July 23, 2012 (Tr. 1–3).

As a result, the Plaintiff filed her Complaint (Doc. 1) in the instant action on September 12, 2012, challenging the ALJ's decision.  The Plaintiff has exhausted her administrative remedies, and this case is ripe for review under 42 U.S.C. § 405(g).

## Plaintiff's Medical History

The Plaintiff was born on September 23, 1974 (Doc. 19 at 2).  On August 1, 2007, she was diagnosed with a pituitary tumor (Tr. 625).  On September 12, 2007, Plaintiff's treating physician, Adelina Flores, M.D., recommended surgical intervention due to the size of the tumor (Tr. 608–14, 627).  On October 3, 2007, the Plaintiff underwent brain surgery involving resection of pituitary adenoma performed by Vivane Tabar, M.D. (Tr. 692–93).

The Plaintiff continued seeing Dr. Flores in 2008, and Dr. Flores' treatment notes indicate that Plaintiff suffered headaches and other pain during that time (Tr. 798, 801, 803).  The record further indicates that Plaintiff returned to work but ended up taking a leave of absence because of her condition (see Tr. 797).

On May 9, 2008, Melvin Greer, M.D., wrote a letter to a Dr. Shell, noting that Plaintiff experiences nausea, dizziness, and head pressure that occurred approximately 2-3 times per week (Tr. 814), but also noting that Plaintiff's cognition was normal (Tr. 815).

On May 14, 2008, the Plaintiff underwent a consultative evaluation with Kenneth A. Visser, Ph.D. (Tr. 789–793).  Dr. Visser diagnosed the Plaintiff with severe adjustment disorder, depression and anxiety, and generalized anxiety disorder (Tr. 792).  Dr. Visser determined that the Plaintiff's Global Assessment of Functioning (GAF) score was 50 (Tr. 792).  Dr. Visser observed that the Plaintiff was tearful during the interview (Tr. 789, 791).

In the mental status part of the report, Dr. Visser noted that the Plaintiff displayed a visible sense of distress throughout most of the evaluation (Tr. 791).  The Plaintiff

indicated she was having problems focusing on what she reads, and that her lack of confidence and anxiety interfere with her ability to comfortably make choices (Tr. 792). Further, Plaintiff indicated that she was uncomfortable in crowds (Tr. 791).

On May 30, 2008, state agency non-examining psychological consultant, Sharon Ames-Dennard, Ph.D., opined that the Plaintiff has moderate limitations in the ability to maintain attention and concentration for extended periods and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 823–24). Dr. Ames-Dennard further determined that Plaintiff had moderate limitations in the area of concentration, persistence, and pace (Tr. 836).

In July 2008, the Plaintiff saw Amy Mellor, M.D., primarily for treatment of her headaches (Tr. 841–54). On August 28, 2007, Plaintiff began seeing Dr. Flores (Tr. 876), who on October 3, 2008, opined that Plaintiff suffered from chronic fatigue syndrome, but did not see the Plaintiff a sufficient number of times to give a completely accurate diagnosis (Tr. 186–87).

On December 22, 2008, Sharon Salter, LMHC, observed that the claimant suffered from "severe overt anxiety" and had depressed facies (Tr. 980). LMHC Salter diagnosed the claimant with major depressive disorder secondary to general medical condition and generalized anxiety disorder, and determined that Plaintiff had a GAF score of 46 (Tr. 980).

The Plaintiff saw a rheumatologist, Sash S. Seshadri, M.D., between January 12, 2009, and April 22, 2009 (Tr. 1053–60). Dr. Seshadri diagnosed Plaintiff with myalgia, which he believed was most likely fibromyalgia, and restless leg syndrome (Tr. 1060).

On July 14, 2009, the Plaintiff complained to Dr. Arias that her panic attacks had gotten much worse in the past 3 years (Tr. 1068).  Based on this visit, and subsequent visits between November 2009 and April 2011, Dr. Arias diagnosed plaintiff with major depressive disorder, generalized anxiety disorder, and panic attacks with agoraphobia (Tr. 1254).

On February 14, 2011, James Brooks, Ph.D., completed an interrogatory of the Plaintiff's mental limitations at the request of ALJ Colon (Tr. 1107–16).  Dr. Brooks believed that all of Plaintiff's mental limitations were no more than mild (Tr. 1114–15).  On February 19, 2011, Lee A. Fisher, M.D., completed an interrogatory regarding the Plaintiff's physical limitations (Tr. 1118–26).  Dr. Fisher determined that Plaintiff can perform light work with certain other limitations (Tr. 1120).

## Administrative Law Judge's Decision

At the hearing before ALJ Arline Colon on June 15, 2011, Nicholas Fidanza testified as a vocational expert (VE) (Tr. 111).  The ALJ asked the VE to assume a younger individual with more than a high school education and the Plaintiff's past work history (Tr. 24, 112–13).  In addition, that individual would be able to frequently lift up to 10 pounds; occasionally carry up to 20 pounds; sit, stand, or walk for 6 hours in an 8-hour workday; frequently perform handling and fingering with the right hand; continuously bilaterally perform reaching, feeling, pushing, and pulling; continuously perform handling and fingering with the left hand; continuously use the right foot and left foot in operating foot controls; frequently balance; occasionally climb ramps or stairs; never climb ladders or scaffolds; occasionally stoop, kneel, crouch, and crawl; no more than moderate exposure to noise intensity; never be exposed to unprotected heights;

frequent exposure to humidity, wetness, extreme cold and heat; continuous exposure to moving mechanical parts, operating a motor vehicle, dust, fumes, odors, and pulmonary irritants and vibrations; limited to simple and routine tasks; would have minimal decision-making about the work processes (Tr. 112–13).

The VE testified that an individual with those limitations could perform the jobs of Mail Clerk, DOT No. 209.687-026, light, specific vocational preparation (SVP) level of 2, which has 500 jobs locally, 2,600 statewide, and 50,000 nationally (Tr. 112–13); the job of Rental Clerk, DOT No. 295.357-018, which has 200 jobs locally, 1,000 in the state, and 25,000 nationally (Tr. 112–13); and the job of Usher, DOT No. 344.677-014, which has 300 jobs locally, 2,000 in the state, and 60,000 nationally (Tr. 112–13).

On cross-examination, the VE testified that if the individual had moderate limitations in the ability to perform work activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, this individual would be unable to work (Tr. 114–15). Counsel defined "moderate" for the VE as occurring 20 percent of the time (Tr. 114). Finally, the VE stated that based on the limitations described by Dr. Arias, an individual with the Plaintiff's age, education, and work experience would be unable to work (Tr. 115–16; 1248–1250).

The ALJ performed a five-step sequential disability analysis as outlined in 20 C.F.R. § 404.1520. At step one, the ALJ found that the Plaintiff did not engage in substantial gainful activity since September 12, 2007 (Tr. 22). At step two, the ALJ found that the Plaintiff suffers from the following severe impairments: history of resection of pituitary tumor, diverticulitis, acromegaly, hypothyroidism, adrenal insufficiency, fibromyalgia, chronic fatigue syndrome, affective disorders, diabetes

mellitus, arterial homeostatic thymus hormone, and anxiety-related disorders (Tr. 22).

At step three, the ALJ concluded that none of the Plaintiff's impairments meet or equal

the listed impairments in 20 C.F.R., Part 404, Subpart P, Appx. 1 (Tr. 22).  In the RFC,

the ALJ included the following limitations:

> [T]he claimant has the residual functioning capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: the claimant is able to lift and/or carry 20 pounds occasionally, and 10 pounds frequently; the claimant is able to sit, stand, or walk for up to six hours in an eight-hour workday; the claimant is able to continuously reach, feel, push, and pull, bilaterally; the claimant is able to frequently handle and finger using the upper right extremity, and continuously handle and finger using the upper left extremity; the claimant is able to continuously operate foot controls, bilaterally; the claimant is not able to climb ladders, ropes, or scaffolds; the claimant is able to balance frequently; the claimant is able to occasionally stoop, kneel, crouch, crawl and climb ramps or stairs; the claimant is not able to tolerate exposure to unprotected heights; the claimant is able to tolerate no more than frequent exposure to humidity and wetness, and extreme cold and heat; the claimant is able to tolerate exposure to no more than moderate noise; the claimant is able to operate a motor vehicle; the claimant is able to tolerate continuous exposure to moving mechanical parts, vibrations, and dusts, odors, fumes and pulmonary irritants; the claimant is limited to performing simple and routine tasks; and the claimant is able to engage in minimal decision-making related to work processes.

 (Tr. 24).  At step four, the ALJ found that the Plaintiff is unable to perform any past

relevant work[3] based on her Residual Functional Capacity (RFC) (Tr. 35).  And finally,

at step five, the ALJ concluded that there are jobs in significant numbers that the

Plaintiff can perform, namely the jobs of Mail Clerk, Furniture Rental Clerk, and Usher

(Tr. 36), and as a result, found Plaintiff not disabled based on her RFC of light work with

limitations (Tr. 37).

---

[3] Plaintiff's past relevant work included day worker or house cleaner, nurse's aide, phlebotomist, and EKG technician.  (Tr. 35).

## THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence.  Hibbard v. Commissioner, 2007 WL 4365647 at *2 (M.D. Fla. December 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971)); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)); 42 U.S.C. § 405(g).  In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[4]  20 C.F.R. §§ 404.1520(a), 404.920(a).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995)); Walden v. Schweiker, 672 F.2d 835, 838–39 (11th Cir. 1982); Richardson, 402 U.S. at 401.

---

[4] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:

*Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.

*Step 2.*  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.

*Step 3.*  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.

*Step 4.*   Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.

*Step 5.*  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Phillips v. Barnhart, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004).   The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  Phillips, 357 F. 3d at 1240 n.8; Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005).   If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the case.  42 U.S.C. § 405(g) (sentence four).  The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs, 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

Plaintiff's six arguments for remand can be divided into two general issues:  (1) whether the VE testimony was defective; and (2) whether the ALJ properly considered the medical and psychiatric opinions when making its decision (Doc. 19 at 10–34). Accordingly, the Court will consider each argument based on the substantial evidence standard.  42 U.S.C. § 405(g).

## 1. VE's Testimony

Plaintiff's arguments concerning the VE's testimony are:  (A) the VE did not state there was a conflict between his testimony and the DOT (Doc. 19 at 15), and whether that warrants remand; and (B) the VE "failed to identify the correct region where the Plaintiff lives" (Doc. 19 at 13).

### A. Whether the VE's testimony conflicted with the DOT, and whether the ALJ erred in relying on the VE's testimony

Plaintiff contends that the VE's testimony was inconsistent with the DOT, and that the VE failed to disclose the inconsistency to the ALJ, rendering the VE's testimony "neither relevant nor substantial evidence" (Doc. 19 at 18).  Specifically, the ALJ's second hypothetical to the VE limited the RFC to "simple and routine tasks and would

have minimal decision making about the work processes" (Tr. 112).  The VE identified each of the positions with a Specific Vocational Preparation (SVP) of 2 (Tr. 113–14), which is consistent with the DOT's entries for each position (see DOT § 209.687-026 (4th ed. 1991), 1991 WL 671813 (Mail Clerk); DOT § 295.357-018 (4th ed. 1991), 1991 WL 672589 (Furniture Rental Consultant); DOT § 344.677-014 (4th ed. 1991), 1991 WL 672865 (Usher)).   However, the reasoning levels for each position are:  Furniture Rental Clerk, level 3[5]  (Doc. 19-4); Mail Clerk, level 3 (Doc. 19-5); and Usher, level 2[6] (Doc. 19-3).

The crux of Plaintiff's argument is that the reasoning levels noted in the DOT for each position, not the SVP, is inconsistent with the VE's testimony that Plaintiff could perform these jobs under the limitation of "simple and routine tasks and . . . minimal decision making," and therefore, the ALJ's decision was not based on substantial evidence (Doc. 19 at 16).  The Commissioner argues that there is no inconsistency based on the SVP levels (Doc. 22 at 19).

Under SSR 00-4p, "[w]hen a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4.  The ALJ is to ask whether a conflict exists, and if so, "obtain a reasonable explanation for the apparent conflict." Id.  The law in the Eleventh Circuit is clear that "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." Jones v. Apfel, 190 F.3d 1224, 1229–30 (11th Cir. 1999).

---

[5] The explanation for Level 3 is as follows:  "Apply common sense understanding to carry out instructions in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations" (Doc. 19-4 at 1).

[6] The explanation for Level 2 is as follows:  "Apply common sense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations" (Doc. 19-3 at 1).

Further, if the ALJ asks the VE whether any conflicts exist between the DOT and the VE's statements, and the VE responds in the negative, "the ALJ is not required independently to identify whether there is any inconsistency." Garskof v. Astrue, 2008 WL 4405050, at *6 (M.D. Fla. 2008).   This is especially true when no question of consistency is raised at the hearing by Counsel. Id.

Here, the ALJ inquired and was told that no conflict existed between the VE testimony and the DOT (Tr. 114).  In addition, Plaintiff's counsel did not raise the issue of conflicting testimony to the ALJ at the proceeding, nor did counsel press the VE about whether a conflict existed when examining the VE himself (Tr. 114–117).

There have been cases in which the District Court found a conflict between "simple, repetitive tasks" and reasoning levels of three, prompting a remand to the ALJ to further explore an "apparent conflict." See, e.g., Leonard v. Astrue, 487 F. Supp. 2d 1333, 1339–40 (M.D. Fla. 2007). In Leonard, there were two hearings in the case, one before the promulgation of SSR 00-4p and one after.  Id.  The court found that there was no obligation to inquire about conflicts at the first hearing; however, there was an obligation at the second, post-SSR 00-4p, hearing.  Because the ALJ at the second hearing had simply relied on the first hearing's testimony, and did not inquire about conflicts, the court found that the ALJ did not comply with SSR 00-4p. Id.  Therefore, the case was remanded to the ALJ for resolution of the conflict between the DOT and the VE testimony under SSR 00-4p. Id. at 1340.

However, in this instance, on this record, there is no indication that the ALJ ignored SSR 00-4p.  To the contrary, the ALJ made an affirmative effort to comply with it (Tr. 36, 114).  Under SSR 00-4p, the ALJ was to inquire about any conflict, and if

identified, the ALJ was to elicit an explanation from the VE.  Here, the VE testified that there was no conflict (Tr. 114).  Because SSR 00-4p is silent regarding the further probing of a VE after he testifies there was no conflict, the ALJ did not commit error when it did not further press the VE about inconsistencies.  Garskof, 2008 WL 4405050, at *6.

Plaintiff argues that because there was a misrepresentation by the VE to the ALJ, the rule that the VE trumps the DOT does not apply, and the case should be remanded to inquire further into the inconsistencies (Doc. 19 at 16).  Plaintiff claims that performing "simple and routine tasks" is beneath the reasoning levels required in the jobs identified, and reversible error was committed by relying upon the VE testimony that was inconsistent with the hypothetical and the DOT (Doc. 19 at 16).

In Akins v. Comm'r of Social Security, 2009 WL 2913538 (M.D. Fla. 2009), the VE testified that there were no inconsistencies between his testimony and the DOT.  Id. at *4.  Based on the VE's testimony, the ALJ made a specific finding that there was no conflict.  Id.  However, the court found that there were some apparent inconsistencies between the reasoning levels in the DOT and the RFC indicated via the hypothetical.  Id. at *5.  The court pointed out that it was "not entirely clear" and that "[a]t the very least, the record does not indicate any explanation as to how the hypothetical claimant limited to only repetitive tasks could perform any of these occupations, as described by the DOT."  Id.  As a result, the court concluded:  "In this limited circumstance, the matter must be remanded for additional development of the vocational record and further consideration."  Id. at *7.

Here, as in Akins, the record is silent as to how a person who is limited to "routine tasks" and "minimal decision making" (Tr. 112) can perform jobs listed in the DOT with reasoning levels of 2 and 3.  Without further development of the record on this issue, substantial evidence does not support the ALJ's finding.  Akins, 2009 WL 2913538, at *7.

The Commissioner's argument that no conflict exists relies too narrowly on the fact that the SVP levels were consistent (Doc. 22 at 19).  This does not address discrepancies between the reasoning levels listed in the DOT and the VE's testimony pertaining to someone limited to "minimal decision making about the work processes" (Tr. 112).  Further, the Commissioner asserts that even if a conflict exists, the ALJ complied with SSR 00-4p by asking about potential conflicts and stopping there (Doc. 22 at 19–20).  But if the ALJ specifically relied on misinformation, as it appears to be the case here, it cannot be said that substantial evidence supports the ALJ's decision. Akins, 2009 WL 2913538, at *7.

Based on the foregoing, the case should be remanded to further develop the record on the issue of whether the Plaintiff's RFC is consistent with performing jobs with the reasoning levels of two and three.

**B. <u>Whether the appropriate geographical information was considered</u>**

Plaintiff argues that since the VE relied on data regarding Mail Clerk positions in the Hillsborough, Pinellas, and Pasco County metro area, it did not give the proper job statistics pertinent to her situation because she is a resident of Sarasota County, which is located in a different Metropolitan Statistical Area, as determined by the Census Bureau (Doc. 19 at 13–15).  This argument has little merit under the relevant law.

Under 20 C.F.R. § 404.1566, the test is whether "work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country."  Indeed, the regulation specifically states:  "It does not matter whether—(1) work exists in the immediate area in which you live; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work."  20 C.F.R. § 404.1566(a)(1).  The Eleventh Circuit reiterated that "[t]he appropriate focus under the regulation . . . is the national economy.  Thus, even if [plaintiff's] evidence were credible to the lack of jobs in his geographic area, his failure to disprove the existence of such jobs on a national scale should leave the ALJ's finding intact."  Allen v. Bowen, 816 F.2d 600, 603 (11th Cir. 1987) (citation omitted).

Indeed, nothing in the regulation or the statute indicates that the jobs identified in the VE's assessment must be within the same Metropolitan Statistical Area as the claimant, as Plaintiff suggests.  Thus, the fact that the VE used data from Pasco, Hillsborough, and Pinellas Counties, even though Plaintiff lives in Sarasota County, does not destroy the reliability of the VE's testimony.

Plaintiff further contends "it would be unreasonable to expect that the Plaintiff would move across the country to perform the unskilled Mail Clerk, Rental Clerk, or Usher positions provided by the VE" (Doc. 19 at 15).  Be that as it may, reasonableness is not the appropriate inquiry for this Court, nor does the existence of jobs in Hillsborough County require Plaintiff to "move across the country."  Rather, the inquiry is whether substantial evidence shows that a significant amount of jobs exist on the national level.  20 C.F.R. § 404.1566.  Here, the VE testified that the numbers for Mail Clerk were 500 locally, 2,600 statewide, and 50,000 nationally; the numbers for Rental

Clerk were 200 locally, 1,000 statewide, and 25,000 nationally; and the numbers for Usher were 300 locally, 2,000 statewide, and 60,000 nationally (Tr. 112–13).  Thus, the VE identified a significant amount of jobs in the national economy.

Accordingly, the VE testimony did provide the proper job statistics even though the data was from the Tampa Bay Area.

### 2.  ALJ's Consideration of the Evidence

Plaintiff's arguments concerning the ALJ's consideration of the evidence are:  (A) the ALJ did not properly consider the opinion of Dr. Ames-Dennard when finding that the Plaintiff would be able to work; (B) the ALJ did not consider updated evidence on remand from treating psychiatrist Dr. Arias; (C) the ALJ did not give proper weight to Plaintiff's treating physicians; and (D) the ALJ should have found that the Plaintiff's headaches were a severe impairment (Doc. 19 at 32).

### A.  Whether ALJ improperly considered Dr. Ames-Dennard's assessment

Plaintiff first asserts that Dr. Ames-Dennard's opinion precludes "all work" based on the VE's answer to a hypothetical posed by Counsel (Doc. 19 at 11; Tr. 114–15).  In the hypothetical, counsel asked the VE whether a person with "moderate limits in the ability to perform activities within a schedule and maintain regular attendance and be punctual within customary tolerances . . . defin[ing] moderate as occurring up to 20 percent of the time would . . . impact the jobs . . . identified of mail clerk, rental clerk[,] and usher" (Tr. 114).  The VE's response was "I believe so" (Tr. 114).  Counsel followed up with, "Would it eliminate jobs?" (Tr. 115); to which the VE responded, "I believe it would" (Tr. 115).  Yet, Counsel ended the line of questioning there, and did not ask the VE to clarify which jobs would be eliminated or whether any would remain (Tr. 115).

Thus, the VE testimony was inconclusive as to whether "moderate" limitations in addition to the limitations noted in previous hypotheticals would preclude *all* work.

Even assuming that the VE testimony was conclusive that "moderate" limitations would eliminate all of the jobs identified by the VE to the ALJ, the Plaintiff's reliance on Dr. Ames-Dennard's analysis to underscore Plaintiff's moderate limitations is misplaced. Plaintiff claims that "[t]he ALJ erred by failing to discuss the Plaintiff's moderate limitations in ability to complete a normal workday or workweek as determined by Dr. Ames-Dennard in her decision, while giving the opinion of Dr. Ames-Dennard a 'significant weight'" (Doc. 19 at 12).   To support this contention, Plaintiff cites to Dr. Ames-Dennard's Mental Residual Functional Capacity Assessment (MRFCA), dated May 30, 2008 (Tr. 822–25).   On page 3 of the MRFCA, Dr. Ames-Dennard checked "Moderately Limited" next to "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" (Tr. 823). However, Dr. Ames-Dennard's opinion in the section titled "Functional Capacity Assessment"—the section that summarized all of her observations—stated that "[n]o substantial mental health restrictions were evident" (Tr. 824).   Thus, Dr. Ames-Dennard's findings did not warrant a finding that all work would be precluded.

Accordingly, substantial evidence supports that the ALJ did not erroneously construe Dr. Ames-Dennard's findings in conjunction with the VE's testimony.

**B.** **Whether good cause existed to give little weight to treating psychiatrist, Dr. Arias', Opinion, and whether the ALJ complied with the AC's Remand Order**

In its Remand Order, the AC directed the ALJ to consider a medical opinion from Dr. B. Arias, dated October 14, 2009, which indicated that Plaintiff is "mentally unable to work" (Tr. 148).  Plaintiff contends that the ALJ failed to consider other treatment notes from "nine visits" with Dr. Arias (Doc. 19 at 19), and that such inaction contravened the AC's Remand Order.  Plaintiff further argues that the ALJ gave improper weight to the opinion of Dr. Arias, the Plaintiff's treating psychiatrist (Doc. 19 at 23).

The Eleventh Circuit has stated that "the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary."  Wind v. Barnhart, 133 Fed. App'x 684, 691 (11th Cir. 2004) (quoting Crawford v. Comm'r of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) (internal quotation marks omitted)). The ALJ errs if he "substitutes his own uninformed medical evaluations for those of a claimant's treating physician's absent good cause . . . or if he fails to articulate clearly his reason for according this evidence less weight." Id. (citing Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)).  Further, good cause exists if "the doctor's opinion is not supported by the evidence, is inconsistent with the physician's own medical records, or merely is conclusory."  Id. (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).

The Court finds that substantial evidence supports the ALJ's finding that it had good cause to attribute "little weight" to Dr. Arias' testimony.  On remand, the ALJ discussed the October 14, 2009 Opinion pursuant to the AC Order (Tr. 32), and gave

three reasons for attributing "little weight" to Dr. Arias' opinion (Tr. 32). The first was that the October 14, 2009 Opinion contradicted Dr. Arias' own treatment records (Tr. 32). For example, the ALJ noted that Dr. Arias gave Plaintiff a score of 55-65 on the Global Assessment of Functioning (GAF) which indicates only moderate to mild difficulties in social or occupational functioning (Tr. 32). The ALJ noted that this GAF score is inconsistent with other forms completed by Dr. Arias which indicated, without providing any explanation, that Plaintiff has many marked limitations (Tr. 32). The ALJ found that this inconsistency casts doubt upon the accuracy of Dr. Arias' opinion (Tr. 32).

The second reason for attributing Dr. Arias' opinion little weight was that his opinion contradicted "much of the rest of the medical evidence in the claimant's record" (Tr. 32). The ALJ noted that Dr. Kenneth Visser wrote during his examination that Plaintiff "presented information clearly, and did not lose her train of thought during the interview"; "she denied any history of unmanageable or disturbing behaviors"; and "she was fully oriented to person, place, time, and reason for the evaluation" (Tr. 32). The ALJ found these observations inconsistent with Dr. Arias' opinion that Plaintiff suffers from many marked limitations related to her mental impairments such as in her ability to carry out detailed instructions, to work in coordination with or proximity to others without being distracted by them, and to make simple work-related decisions (Tr. 32). Further, the ALJ noted that Plaintiff's medical records contain no evidence of emergency mental health treatment or Baker Acts, which would be expected to be in the record if Plaintiff were as limited in mental functioning as Dr. Arias' opinion suggests (Tr. 32).

The final reason for giving little weight to the opinion was that it contradicted the ALJ's own observations of Plaintiff during the remand hearing (Tr. 32). Specifically, the

ALJ observed that Plaintiff's testimony was "logical and coherent" and that Plaintiff "remained fully focused and attentive throughout a proceeding that lasted more than 45 minutes" (Tr. 32).  Accordingly, the ALJ satisfied the good cause threshold articulated in Wind.

In addition, the ALJ's actions were not inconsistent with the AC's Remand Order (Tr. 148–49).  Contrary to Plaintiff's assertion that the AC specifically ordered the ALJ to "consider existing and any updated treatment notes from Dr. Arias" (Doc. 19 at 23), the AC did not indicate that any additional information from Dr. Arias needed to be considered, other than the October 14, 2009 Opinion.  To be sure, it required that the ALJ "[o]btain updated evidence . . . to complete the administrative record," but it did not specify that any other information from Dr. Arias was essential (Tr. 149).  Thus, no error was committed by the ALJ when it did not discuss subsequent records from Dr. Arias.

### C.  **Whether good cause existed to give little weight to treating physicians, Drs. Flores, Seshadri, and Mellor**

It is also clear that the ALJ properly treated the opinions of the treating physicians, Dr. Flores, Dr. Seshadri, and Dr. Mellor, under the good-cause standard. Wind, 133 Fed. App'x at 691.

As to Dr. Flores, the ALJ on remand deferred to the first ALJ's opinion which accorded Dr. Flores' opinion little weight (see Tr. 19, 141).  The ALJ found that Dr. Flores' October 3, 2008 opinion was based "heavily on the subjective report of symptoms and limitations provided to her by the claimant" (Tr. 141).  Specifically, ALJ noted that Dr. Flores' opinion was based on a form that was completed by Plaintiff alone "before giving it to [Dr. Flores] for review" (Tr. 141).  Further, the ALJ found that Dr. Flores' opinion was unsupported by her own treatment notes (Tr. 142).  For example,

the ALJ noted that while Dr. Flores opined that Plaintiff could only sit or stand/walk for 30 minutes in an 8 hour workday, there is nothing to support this limitation in Dr. Flores' medical treatment records (Tr. 142). Accordingly, the ALJ met the good-cause standard to give little weight to Dr. Flores' opinion.

The ALJ gave three reasons for discounting the opinion of Dr. Seshadri (Tr. 31–32). First, the ALJ found that Dr. Seshadri's opinion appeared to be based in large part upon Plaintiff's own reports and not the doctor's observations (Tr. 31). Secondly, the ALJ found internal inconsistencies between Dr. Seshadri's own treatment records and his opinion (Tr. 31), for example, that Plaintiff was unable to balance, stoop, kneel, or crouch—despite the fact that Plaintiff reported being able to do so "with some difficulty" (Tr. 31); and that Plaintiff could only handle and finger for a fraction of the day, whereas Dr. Seshadri's records showed Plaintiff could perform these functions "with no difficulty" (Tr. 31). Finally, the ALJ found that Dr. Seshadri's opinion was inconsistent with the other evidence in the medical record (Tr. 32). Accordingly, under the good-cause standard, the ALJ properly described the reasons for giving little weight to Dr. Seshadri's opinion.

Regarding Dr. Mellor's opinion, the ALJ gave it little weight because it was "vague and does not cite any medical evidence" (Tr. 31). The ALJ noted that Dr. Mellor's opinion did not give specific information on "how long claimant is able to walk or stand," or state the amount of hours necessary for Plaintiff to nap during an eight-hour workday, despite the fact that the opinion provided that Plaintiff was significantly limited in the ability to walk or stand, and that Plaintiff's sleepiness renders her unable to remain awake during a full workday (Tr. 31). Moreover, the ALJ explained that even if

Dr. Mellor's opinion provided more specific descriptions of Plaintiff's limitations, he would still afford Dr. Mellor's opinion little weight because it failed to cite to any specific medical evidence and failed to specify how Plaintiff's symptoms impact Plaintiff's ability to perform work related activities (Tr. 31).   Accordingly, the Court finds that the ALJ sufficiently outlined its reasons for discrediting the opinion of Dr. Mellor, and therefore, satisfied its good-cause burden for doing so.

### D.  Whether the ALJ should have found Plaintiff's headaches were a severe impairment

Plaintiff's final argument that the ALJ did not properly weigh the evidence is that the ALJ did not find that Plaintiff's headaches were a severe impairment (Doc. 19 at 32–34).  This argument differs from the other arguments considered by the Court in that it focuses on the ALJ's determination at step two rather than step five.  Plaintiff insists that the headaches are a severe impairment and that the ALJ erred for holding otherwise (Doc. 19 at 32–34).

At step two, the claimant bears the burden of proving the existence of a severe impairment. Yuckert, 482 U.S. at 146. In considering an alleged impairment, the ALJ must evaluate evidence about its "functionally limiting effects" to determine how it affects the claimant's ability to do basic work activities. Hardenbrook v. Astrue, WL 4031098 *4-5  (M.D. Fla. August 3, 2011) (citing Social Security Ruling ("SSR") 96–3p). At step two, the ALJ is not required to identify all of the impairments that should be considered severe. Heatly v. Commissioner of Social Sec., 382 F. App'x 823, 824 (11th Cir. 2010). Instead, the only requirement of step two is to identify if a severe impairment does in fact exist. Id.  In Heatly v. Commissioner of Social Security, the ALJ determined the only severe impairment the claimant suffered from was status-post cervical fusion,

despite the fact that the claimant had separately been diagnosed with chronic back pain. Hardenbrook, WL 4031098 at *4-5 (citing Heatly, 382 F. App'x at 824). The Eleventh Circuit held that "[e]ven if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded [claimant] had a severe impairment; and that finding is all that step two requires." Id. (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir.1991) (applying the harmless error doctrine to social security cases); Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir.1987) ("the finding of any severe impairment ... whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is enough to satisfy step two) (emphasis added)).

In this instance, the ALJ found that the Plaintiff had other severe impairments and thus, he committed no error at step two since that is all that is required of the ALJ at step two.  Moreover, while the ALJ did not find the Plaintiff's headaches to be a severe impairment he did address her headaches in his decision.  The ALJ discussed the reasons for not declaring Plaintiff's headaches a severe impairment:

> [W]hile the claimant describes this as one of her most intense and limiting symptoms, she does not consistently complain of this symptom to her treating physicians.  Given the frequency and intensity of the headaches the claimant alleged, the undersigned expected the record to contain regular mention of these headaches in the treatment record.  In fact, on some visits such as on November 17, 2009, she explicitly denied headaches, which is odd because the claimant testified at the hearing that she experiences a constant underlying headache . . . .  Even when she does mention headaches, such as on July 14, 2008, and August 14, 2009, she never describes it in the same terms as she did at the hearing where she talked about a constant underlying headache that turns into intense headaches four to five times a week that can last for hours . . . .  The rarity of complaint of this symptom combined with the noticeable contrast between how she described this symptom at the hearing versus to her treating physicians undermines the credibility of the claimant's allegations related to her headaches.

(Tr. 30 (citations omitted)).  Thus, the Commissioner discounted the Plaintiff's headache complaints with substantial evidence from the record.  As such, the ALJ did not err in not finding the Plaintiff's headaches to be severe at Step 2.  Because the ALJ relied on substantial evidence in determining that the Plaintiff's headaches were not a severe impairment, the ALJ's determination as to the headaches at Step 2 should remain undisturbed.

Accordingly, it is hereby

**RESPECTFULLY RECOMMENDED:**

That the decision of the Commissioner be REVERSED and the matter be REMANDED to the Commissioner of Social Security pursuant to 42 U.S.C. §405(g) for further development of the record as to whether the Plaintiff's RFC precludes performing jobs with reasoning levels of two and three as listed in the DOT.

Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Fort Myers, Florida, this 23rd day of August, 2013.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:
Counsel of record